SUSAN W. BEDYK,
Appellant,

*vs.*

BANK OF DELAWARE, formerly Equitable Security Trust Company,
a corporation of the State of Delaware,
Appellee.

RUTH M. NIELSEN,
Appellant,

*vs.*

BANK OF DELAWARE, formerly Equitable Security Trust Company,
a corporation of the State of Delaware,
Appellee.

Supreme Court, On Appeal, December 20, 1961.

*Clement Wood,* of Allmond & Wood, Wilmington, for appellant Susan W. Bedyk.

*H. James Conaway, Jr.,* and *Richard H. May,* of Morford, Young & Conaway, Wilmington, for appellant Ruth M. Nielsen.

*Victor F. Battaglia,* of Theisen & Lank, Wilmington, *amicus curiae,* opposed.

*Howard L. Williams* and *George C. Hering, III,* of Morris, James, Hitchens & Williams, Wilmington, for appellee Bank of Delaware, formerly Equitable Security Trust Co.

SOUTHERLAND, C. J., WOLCOTT, Justice, and TERRY, Judge, sitting.

SOUTHERLAND, Chief Justice: This case concerns the construction of the will of Daniel E. Wilson, who died December 7, 1934. Paragraph 2 of the will devises outright to his friend, Janet Miller, a house and lot on Jefferson Street in the City of Wilmington. Paragraph 3 bequeaths to Janet Miller $10,000 in cash. Paragraph 6 leaves his residuary estate in trust to pay the net income to Janet Miller for life.

Paragraphs 7 and 8 of the will provide:

"Seventh:—Upon the death of the said Janet Miller, the then principal amount in this trust shall be divided equally among the following relatives of mine who are at that time alive: my nephew, Harry Wilson of North East, Maryland, my brother, Samuel D. Wilson of Wilmington, Delaware, my sister, Leoti Merritt of Warwick, Maryland, my sister Ella Aiken of Warwick, Maryland, and my sister Mary Lynch of Elkton, Maryland.

"In the event any of the above beneficiaries contest this my last Will and Testament, I hereby revoke any bequest I have made herein to such person or persons so contesting and it is my will that such contestant receive none of my estate.

"Eighth:—In the event that all of the distributive provisions of this will fail, then I direct that my estate be distributed as is provided for in the laws of Delaware for intestate estates."

The beneficiaries named in Paragraph 7 were the testator's next of kin. None of them survived the life tenant. Samuel D. Wilson, the last surviving contingent remainderman, died in 1957. The life tenant died October 6, 1959.

Upon her death it became necessary to ascertain what persons take the estate under the provisions of Paragraph 8. The following facts are pertinent:

One of the four contingent remaindermen, Harry Wilson, bequeathed all of his estate to his wife. Appellant Susan W. Bedyk is his daughter.

Another of the remaindermen, Leoti Merritt, died intestate, leaving three children. One of them, Richard Merritt, died testate leaving five children, one of whom is appellant Ruth M. Nielsen. Under the will she was not a beneficiary of his residuary estate.

No will appears in any of the other three lines of descent.

Out of these facts two questions arise:

(1) Whether the intestate heirs are to be ascertained as of the date of the testator's death or as of the date of the life tenant's death.

(2) If the former date is applicable, whether the interests inherited are transmissible by will.

The successor trustee filed a complaint for instructions. The two appellants appeared. They contended that the proper date for ascertaining the intestate heirs was the date of the death of the life tenant; and if not, then the intestate shares were not transmissible interests.

No other person in interest appeared, and the Chancellor appointed an *amicus curiae* to oppose the contentions of Susan W. Bedyk and Ruth M. Nielsen.

The Chancellor ruled against them on both points, and they appeal.

1. *As of what date are the intestate heirs to be ascertained?*

■ The general rule is that if a will designates the "heirs" or "next of kin" as beneficiaries they are to be ascertained as of the time of the testator's death. Especially is this so if the will directs that the property shall descend according to the intestate laws. 3 *Page on Wills* (*3d Ed.*), § 1054. In *Delaware Trust Co. v. Delaware Trust Co.*, 33 *Del.Ch.* 135, 139, 91 *A.2d* 44, 46, 38 *A.L.R.2d* 318, Vice Chancellor Bramhall said:

> "The law in this state and elsewhere is clear that in the absence of a clear and unambiguous indication of an intention to the contrary the heirs-at-law will be determined as of the date of the death of the ancestor and not at the time of the death of the last life tenant or of the time of distribution. *Doe ex dem. Wright v. Gooden,* 6 *Houst.* 397, 419; *Mason v. Baily,* 6 *Del.Ch.* 129, 14 *A.* 309; In re *Nelson's Estate,* 9 *Del.Ch.* 1, 74 *A.* 851; In re *Estate of Smith,* 16 *Del.Ch.* 272, 145 *A.* 671; *Magee, Adm'r v. Chambers,* 17 *Del.Ch.* 45, 147 *A.* 306; *Hearn v. Hastings,* 17 *Del.Ch.* 229, 152 *A.* 129; *Delaware County Trust Company v. Hanby,* 19 *Del.Ch.* 228, 165 *A.* 568; *Wilmington Trust Co. v. Morris,* 30 *Del.Ch.* 144, 54 *A.2d* 851."

The cited cases fully sustain this statement.

■ As appears from that case, an exception to the general rule exists if a contrary intention may be found in the will. Sometimes an incongruity may be found in tracing the line of descent through the same persons whose remainder interests under the will have failed. In the *Delaware Trust Company* case, above cited, such a situation, together with other facts, was deemed sufficient to justify an inference that the testator intended the heirs to be determined as of the date of death of the life tenant.

■ But no such inference may be drawn in this case. It is perfectly clear that the main object of the testator's bounty was his

friend, Janet Miller—not his blood relatives. The persons named in Paragraph 7 were his next of kin, yet he did not give any of them a vested interest in his property. The inheritance of each was entirely dependent on outliving the life tenant. And if any of them contested the will, he or she was to take nothing.

Finally, if none of them outlived the life tenant, the property was not to go to other named relatives or to relatives living at the time of the death of the life tenant, but was to descend according to the intestate laws. In effect, the testator said: "If these named relatives are all dead when Janet Miller dies, let the law take its course". As was held by Justice Harrington in *Burton v. Burton*, 4 *Har.* 38, 43, the testator's purpose was "to leave [the property] precisely as if he had made no will".

Certainly, in cases of intestacy the persons entitled must be ascertained as of the time of the testator's death.

We agree with the Chancellor's conclusion on this point.

2. *Are the interests of the intestate heirs transmissible by will?*

█ This question is really answered by our discussion of the first point. If the interests descend as in a case of intestacy they are interests transmissible by will. The wills of Henry Wilson and Richard Merritt thus transmitted the contingent interests in the testator's estate. See *Restatement, Property, Future Interests, § 165* We do not understand that this proposition is disputed; at all events we think it clear. What appellants argue, in effect, is that the rules of intestacy are not applicable because Paragraphs 7 and 8 of the will create not only contingent remainders in the relatives named but also contingent remainders in the testator's heirs, and that such contingent remainders pass to the heirs in being when the contingency happens and the estate vests.

Preliminarily, it should be noted that this would require the question of transmissibility by will to turn upon the date of death of Samuel D. Wilson, the last suriviving remainderman, in 1957. As

the Chancellor pointed out, this would certainly be an anomalous result.

But the real fallacy of the argument lies in its attempt to apply the law of contingent remainders to what is in effect a simple case of intestacy. All of appellants' arguments about contingent remainders are based on the assumption that Paragraph 8 embodies a substitutionary bequest to individuals. This is simply not the fact. Thus, appellants seek to import into the case principles which have no bearing upon it. Compare the remarks of Chief Justice Booth in *Burton v. Burton,* 4 *Har.* 41, in dealing with a somewhat similar case of directed intestacy.

The same comment is applicable to the argument that the estate in the heirs of the testator was a possibility of reverter. A possibility of reverter commonly arises when a defeasible fee is created. Cf. *Addy v. Short,* 46 *Del.* 178, 81 *A.2d* 300, *reversed on other grounds,* 47 *Del.* 157, 89 *A.2d* 136. This argument is another attempt to escape the simple and plain result of a "directed intestacy".

We are in agreement with the Chancellor's opinions on both points. This conclusion makes it unnecessary to consider the contention of the *amicus* that Paragraph 8 never became operative.

The judgment below is affirmed.